UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOHN PAVAO,

      Plaintiff,

v.                                  Case No. 5:15cv67-WS-CJK

JENKINS, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case, brought under 42 U.S.C. § 1983, is before the court on defendant Tina Jenkins' motion for summary judgment. (Doc. 48). Jenkins argues plaintiff cannot establish either an Eighth Amendment failure to protect claim or an Eighth Amendment deprivation of medical care claim against her. Plaintiff submitted an affidavit in opposition to the motion. (Doc. 50). The matter is referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the record, the parties' submissions, and the relevant law, the undersigned recommends that the motion for summary judgment be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, proceeding *pro se* and *in forma pauperis*, is an inmate of the Florida Department of Corrections currently confined at Tomoka Correctional Institution.

On October 15, 2015, plaintiff filed the amended complaint, the operative pleading in this action. (Doc. 23). The complaint names 3 employees of Apalachee Correctional Institution ("Apalachee CI") as defendants: Captain Tina Jenkins, Sergeant Carlton E. Leslie, and Officer Antonio Thomas.[1] The complaint alleges the defendants violated plaintiff's Eighth Amendment rights by: (1) failing to protect him from an assault by another inmate; and (2) failing to provide him with adequate medical care in the aftermath of the assault. As relief, plaintiff seeks $2,000,000 in damages.

Defendant Jenkins moved for summary judgment on September 9, 2016, arguing: (1) she cannot be liable for failing to protect plaintiff from the inmate assault because she was unaware the inmate posed a risk of harm to plaintiff; and (2) she cannot be liable for depriving plaintiff of medical care because she was not aware his leg was broken during the assault and he did not request a wheelchair following it. (Doc. 48).

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates

---

[1] Defendants Leslie and Thomas were not identified by name in the amended complaint. (Doc. 23). Plaintiff subsequently learned the names of these defendants through discovery. (Doc. 50).

the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 160 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).

Generally, a court must view the facts in the light most favorable to the non-moving party (here, plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). The court may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380,

127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).  Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'"  *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

## FACTS

The facts pertinent to the resolution of the motion are drawn from plaintiff's verified amended complaint (doc. 23) and the evidence in the summary judgment record (docs. 48, 50).  *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment).  Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff."  *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005).  Nevertheless, matters stated below as "facts" for purposes of summary judgment review may not be the actual facts.  *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

On December 19, 2014, prison staff, says plaintiff, planted a cellphone charger in plaintiff's property and placed him in confinement for 60 days.  After his

release from confinement on February 14, 2015, plaintiff was assigned to M1-Dorm. That dorm "was the highest custody dorm in the prison" and "[one-half] of the inmates [there are] serving life."

At around 7:30 p.m. on February 17, 2015, plaintiff was sitting on his bunk during "count time." The "bunk was directly in front of [the] officer's station and [in] front of [the] main camera." Another inmate, Daniel Lyons, walked up to plaintiff's bunk "swinging a lock in a sock, which is a prison weapon[.]" Plaintiff asserts the officers in the station saw Lyons swinging the weapon but "no one did anything to stop him[.]" Lyons struck plaintiff in the head and left leg with the weapon.

Minutes later, Captain Jenkins "rushed in [and] ordered [plaintiff] outside of [the] dorm." An officer outside the dorm ordered plaintiff to walk to the medical department. Plaintiff told the officer his leg hurt and asked for a wheelchair or crutches, but the request was denied.[2] Plaintiff relates that the officer informed him that if he refused to walk to the medical department, the officer would plant drugs in his property and charge him with possession of contraband. Plaintiff acquiesced and "hopped on one leg all the way" to the medical department. Dr. Alvarez later determined plaintiff's leg and skull were fractured in the attack.

---

[2] In the complaint, plaintiff alleged that he asked Jenkins for a wheelchair. (Doc. 23, p. 6). In his deposition, however, plaintiff admitted he asked a different officer for a wheelchair, not Jenkins. (Doc. 48-3, p. 14).

DISCUSSION

Defendant Jenkins argues she is not liable for an Eighth Amendment violation because she was not aware Lyons posed a substantial risk of harm to plaintiff. (Doc. 48, p. 7-9). "The Eighth Amendment 'imposes a duty on prison officials' to 'take reasonable measures to guarantee the safety of the inmates.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (*quoting Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)) (alterations omitted). To make a failure to protect claim under the Eighth Amendment, a plaintiff must establish: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). "Deliberate indifference requires the following: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'" *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (*quoting Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013)).

Here, the evidence does not suggest Captain Jenkins knew of and disregarded an excessive risk to plaintiff's safety. Plaintiff admits that he had "no relationship" and "no problems" with Lyons before the assault. (Doc. 23, p. 6; Doc. 48-3, p. 5-6). Thus, on February 17, Jenkins was not aware Lyons posed a substantial risk of harm to plaintiff. *See Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("The

known risk of injury must be 'a strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference.") (*quoting Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)). Moreover, Jenkins was not present when Lyons attacked plaintiff, and she did not see Lyons approach plaintiff swinging the sock. (Doc. 48-1, p. 2; Doc. 48-3, p. 13-14). When Jenkins arrived in M1-Dorm, Lyons was no longer attacking plaintiff. (Doc. 48-1, p. 2). No reasonable jury, therefore, could find Jenkins liable for failing to protect plaintiff from the assault by Lyons.

Similarly, the evidence does not suggest Captain Jenkins displayed deliberate indifference to plaintiff's injuries following the fight. "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." After Jenkins arrived, she ordered plaintiff to leave the dorm and instructed an officer to take plaintiff to the medical department. (Doc. 48-3, p. 14). Although plaintiff alleges Jenkins was aware his leg was fractured, he does not explain how Jenkins possessed such knowledge. *See Cordoba v. Dillard's Inc.*, 419 F.3d 1169 (11th Cir. 2005) ("Speculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (*quoting Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995)). Furthermore, Jenkins

observed plaintiff was mobile, and plaintiff admits he did not ask Jenkins for a wheelchair.  (Doc. 48-1, p. 2).  Because the evidence does not allow an inference that Jenkins disregarded a known risk of serious harm by ordering plaintiff to exit the dorm and instructing an officer to take him to the medical department, summary judgment in favor of Jenkins is appropriate on plaintiff's deprivation of medical care claim.

In his deposition, plaintiff suggested Jenkins is liable for the alleged constitutional violations because she supervised the correctional officers who failed to prevent Lyons' attack.  (Doc. 48-3, p. 15) ("She is the overseer of the two officers who didn't do anything to protect me.").  Supervisory officials, however, "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (*quoting Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)). "Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation."  *Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1047-48 (11th Cir. 2014).

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  Alternatively, the causal connection may be established when a supervisor's custom or policy . . . result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the

subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

*Cottone*, 326 F.3d at 1360 (internal quotation and citations omitted).

Here, plaintiff alleges 2 correctional officers failed to protect him from a single attack by Lyons and, thereafter, an officer forced him to walk to the medical department on a fractured leg. Plaintiff, however, has not identified any evidence showing Jenkins knew of the officers' actions or had any connection to the allegedly unconstitutional conduct. Because the evidence does not establish any causal connection between Jenkins and plaintiff's failure to protect and deprivation of medical care claims, Jenkins cannot be held liable in her supervisory capacity.

Accordingly, it is respectfully RECOMMENDED:

1.      That defendant Jenkins' motion for summary judgment (doc. 48) be GRANTED.

2.      That the clerk be directed to enter judgment in favor of defendant Jenkins and against plaintiff.

3.      That this matter be referred to the undersigned for further pretrial proceedings on plaintiff's Eighth Amendment claims against defendants Leslie and Thomas.

At Pensacola, Florida, this 3rd day of May, 2017.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**




NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.