UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

JOHN PAVAO,

    Plaintiff,

v.    Case No. 5:15cv67-WS-CJK

CARLTON LESLIE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case, brought pursuant to 42 U.S.C. § 1983, is before the court on defendants Thomas and Leslie's motion for summary judgment. (Doc. 74). Defendants argue plaintiff cannot establish either an Eighth Amendment failure to protect claim or an Eighth Amendment deprivation of medical care claim. Plaintiff responded in opposition. (Doc. 92). The matter is referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). After reviewing the record, the parties' submissions, and the relevant law, the undersigned recommends that the motion for summary judgment be granted.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, proceeding *pro se* and *in forma pauperis*, is an inmate of the Florida Department of Corrections ("FDOC") currently confined at Marion Correctional

Institution. On October 15, 2015, plaintiff filed the amended complaint, the operative pleading in this action. (Doc. 23). The complaint names 3 employees of Apalachee Correctional Institution ("Apalachee CI") as defendants: Captain Tina Jenkins, Sergeant Carlton E. Leslie, and Officer Antonio Thomas.[1] The complaint alleges the defendants violated plaintiff's Eighth Amendment rights by: (1) failing to protect him from an attack by another inmate; and (2) failing to provide him with adequate medical care in the aftermath of the attack.[2] As relief, plaintiff seeks $2,000,000 in damages.

Defendants Thomas and Leslie have moved for summary judgment, arguing plaintiff cannot establish a failure to protect claim because defendants did not know the attacking inmate posed a risk to plaintiff and any attempt to assist plaintiff would have been futile. Likewise, defendants assert plaintiff cannot establish a deprivation of medical care claim because no evidence shows they exhibited deliberate

---

[1] The complaint also identified "officer who escorted plaintiff to medical" as a defendant. (Doc. 23, p. 1). The court advised plaintiff he should attempt to learn the name of the unknown defendant through discovery and provide it to the court. (Doc. 35, p. 1; Doc. 44, p. 2). Plaintiff, however, never amended the complaint, identified the "officer who escorted plaintiff to medical," or sought to effect service on the individual. The claims against the unknown officer, therefore, should be dismissed without prejudice.

[2] The claims against defendant Jenkins were previously resolved via a motion for summary judgment. (Docs. 63, 66).

indifference to plaintiff's injuries. Plaintiff responded in opposition to defendants' motion.[3]

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477

---

[3] Plaintiff did not attach any evidence to the response. (Doc. 92). A not insignificant portion of the response is devoted to complaints about the operation of the FDOC and the legal resources the FDOC provides to inmates rather than the merits of defendants' motion. He also asserts he has not been able to: (1) obtain "official reports of the incident"; (2) depose Lyons or correctional officers; (3) obtain records of prior allegations of abuse committed by defendants; or (4) serve requests for admission or interrogatories. (Doc. 92, p. 9-10). Plaintiff did not raise these issues before the discovery deadline, and the court's scheduling order specifically warned that "no motions to compel discovery may be filed after the close of discovery." (Doc. 60, p. 3). Furthermore, plaintiff did successfully request the production of some documents. (Docs. 41, 42). He was also provided with a copy of the Inspector General's Investigative Report (doc. 48-2) and, in a previous filing, stated "everything that took place was recorded 100% by two video cameras, therefore there is no need to take depositions by any of the over 80 inmates who saw the entire incident take place." (doc. 50, p. 4). Plaintiff confirmed he viewed the video of Lyons' attack. (Doc. 50, p. 6).

Case No. 5:15cv67-WS-CJK

U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). Generally, a court must view the facts in the light most favorable to the non-moving party (here, plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). The court may not, however, accept any facts that are "blatantly contradicted by the record, so that no reasonable jury could believe [them]." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Moreover, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invsco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

## FACTS

The facts pertinent to the resolution of the motion are drawn from plaintiff's verified amended complaint (doc. 23) and the evidence in the summary judgment record (docs. 48, 50, 74). *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment). Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Nevertheless, matters stated below as "facts" for purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

On October 31, 2014, Officer Corbean took plaintiff away from work detail to a private room. (Doc. 23, p. 5). Corbean told plaintiff if he did not stop filing grievances about prison staff he would "end up in a dorm with lifers and will wake up dead!" (*Id.*). Plaintiff subsequently filed a grievance about Corbean's comments. (*Id.*).

On December 19, 2014, prison staff, says plaintiff, planted a cellphone charger in plaintiff's property and placed him in confinement for 60 days. (*Id.*). After his release from confinement on February 14, 2015, plaintiff was assigned to M1-Dorm. (*Id.*). According to the verified complaint, M1-Dorm "was the highest

custody dorm in the prison" and "[one-half] of the inmates [there are] serving life." (*Id.*).

At around 7:30 p.m. on February 17, 2015, plaintiff was sitting on his bunk during "count time." (*Id.*). The "bunk was directly in front of [the] officer's station and [in] front of [the] main camera." (*Id.*). Defendants Leslie and Thomas were inside the officer's station, which is over 41 feet away from plaintiff's bunk. (Doc. 74-4, p. 1). Two locked doors separated the inside of the officer's station from the bunk. (Doc. 74-1, p. 2).

Another inmate, Daniel Lyons, walked up to plaintiff's bunk "swinging a lock in a sock, which is a prison weapon of choice." (Doc. 23, p. 6). Plaintiff asserts defendants saw Lyons swinging the weapon but "no one did anything to stop him[.]" (*Id.*). Lyons struck plaintiff in the head with the weapon and "when the lock and the sock came away, it came down and hit [plaintiff's] leg." (Doc. 74-3, p. 9).

After the attack, plaintiff appeared at the officer's station bleeding. (Doc. 74-1, p. 1). Minutes later, Captain Jenkins arrived, ordered plaintiff to exit the dorm, and instructed an unknown officer to take him to the medical department. (Doc. 23, p. 6; Doc. 48-1, p. 2; Doc. 74-3, p. 14). After plaintiff left the dorm, the officer ordered plaintiff to walk to the medical department. (Doc. 74-3, p. 10). Plaintiff told the officer his leg hurt and asked for a wheelchair or crutches, but the request

was denied.[4]  (*Id.*, p. 10, 14).  Plaintiff relates the officer informed him that if he refused to walk to the medical department, the officer would plant drugs in his property and charge him with possession of contraband.  (*Id.*, p. 10-11).  Plaintiff acquiesced and "hopped on one leg all the way" to the medical department.  (*Id.*, p. 11).  Dr. Alvarez later determined plaintiff's leg and skull were fractured in the attack.  (*Id.*, p. 11-12).

## DISCUSSION

At various times during this case, plaintiff has suggested Officer Corbean and/or Sergeant Miles encouraged or were otherwise involved in Lyons' attack on plaintiff. (Doc. 23, p. 6; Doc. 50, p. 5; Doc. 92, p. 7).  Over a year after the February 2015 attack, plaintiff says Lyons told him that Sergeant Miles paid Lyons to commit the assault by giving Lyons the drug "K2."  (Doc. 50, p. 5).  Plaintiff, however, has not identified evidence indicating Thomas or Leslie had any involvement in Lyons' decision to attack plaintiff or otherwise conspired to harm plaintiff.  *Cf. Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.") (citation omitted).

---

[4] In the complaint, plaintiff alleged he asked Jenkins for a wheelchair.  (Doc. 23, p. 6).  In his deposition, however, plaintiff admitted he asked a different officer for a wheelchair, not Jenkins.  (Doc. 74-3, p. 10).

Case No. 5:15cv67-WS-CJK

Plaintiff also asserts Thomas and Leslie are liable under the Eighth Amendment for failing to protect plaintiff from Lyons' attack. "The Eighth Amendment 'imposes a duty on prison officials' to 'take reasonable measures to guarantee the safety of the inmates.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (*quoting Farmer v. Brennan*, 511 U.S. 825, 832 (1994)) (alterations omitted). To make a failure to protect claim under the Eighth Amendment, a plaintiff must establish: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). "Deliberate indifference requires the following: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence.'"[5] *Franklin v. Curry*, 738 F.3d 1246, 1250 (11th Cir. 2013) (*quoting Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013)).

The evidence does not establish Thomas and Leslie knew Lyons posed a substantial risk of harm to plaintiff before February 17. Plaintiff admits he had "no relationship" and "no problems" with Lyons before the attack. (Doc. 23, p. 6; Doc. 48-3, p. 5-6). Thus, defendants could not anticipate Lyons' attack before it unfolded.

---

[5] The response to the motion for summary judgment asserts the deliberate indifference standard should not apply because correctional officers "orchestrated" Lyons' attack as retaliation for plaintiff's filing of grievances. (Doc. 92, p. 8, 14-15). As previously indicated, no evidence suggests Thomas or Leslie purposefully sought to harm plaintiff.

Case No. 5:15cv67-WS-CJK

*See Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("The known risk of injury must be 'a strong likelihood, rather than a mere possibility' before a guard's failure to act can constitute deliberate indifference.") (*quoting Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989)).

Plaintiff, however, claims Thomas and Leslie saw Lyons approaching plaintiff with the lock in the sock. (Doc. 50, p. 4; Doc. 74-3, p. 5-6). Because affidavits and deposition testimony must be made on personal knowledge, arguably plaintiff's speculation about what the officers observed does not amount to competent evidence to withstand a motion for summary judgment. And to the extent plaintiff argues the officers should have seen Lyons and recognized the danger based on their location, their failure to do so would constitute negligence, not deliberate indifference, which requires subjective knowledge.

Regardless, even assuming defendants saw Lyons approach plaintiff with the lock in the sock and, at that point, recognized Lyons posed a danger, plaintiff has not introduced evidence showing, or allowing an inference, that defendants could have intervened in time to prevent the attack. According to plaintiff's deposition testimony, Lyons swung the weapon once, and it impacted plaintiff's body in 2 locations. (Doc. 74-3, p. 9) ("[Lyons] hit me in the head with a lock in a sock, and when the lock and the sock came away, it came down and hit my leg."). After plaintiff was struck, he went to the officer's station. (Doc. 74-1, p. 1). Lyons did

not repeatedly strike plaintiff or engage in a prolonged attack. And to reach plaintiff, the officers would have had to travel over 41 feet and through 2 locked doors. Both Thomas and Leslie submitted declarations stating they could not have exited the officer's station and reached plaintiff before the attack was over. (Docs. 74-1, 74-2). And plaintiff has not rebutted this evidence.[6] *See Aning v. Fed. Nat'l Mortg. Ass'n*, 663 F. App'x 773, 776 (11th Cir. 2016) ("Federal Rule of Civil Procedure 56 requires a party asserting that a fact is genuinely disputed to support his assertion by citing to specific materials in the record, and a failure to do so allows the district court to consider the facts as undisputed for purposes of the motion for summary judgment.") (*citing* Fed. R. Civ. P. 56(c)(1)(A), (e)(2)). Because defendants had no opportunity to prevent the attack, they cannot be liable for plaintiff's injuries. *See Johnson v. Boyd*, 568 F. App'x 719, 722 (11th Cir. 2014) (noting complaint did not state claim because it did not allege correctional officers waited an unreasonable amount of time to intervene after another inmate attacked the plaintiff); *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (affirming grant of summary judgment to correctional officer because inmate "presented no evidence that [officer]

---

[6] In response to Captain Jenkins' earlier motion for summary judgment, plaintiff stated "had [the] officers ran out into the dorm to stop the inmate from assaulting me, I would have not [been] assaulted." (Doc. 50, p. 4). Plaintiff, however, did not describe any facts to support his assertion. And plaintiff's "conclusory assertions . . . , in the absence of supporting evidence, are insufficient to withstand summary judgment." *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); *see also Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978) ("[O]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial[.]").

had the ability to reasonably insert himself between [two inmates] to stop the assault without additional help"); *cf. Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008) (stating that to hold officer liable for failing to protect victim from another officer's use of excessive force, the officer must be in a position to intervene).

Finally, the evidence does not suggest Thomas and Leslie are liable for an Eighth Amendment deprivation of medical care claim. "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (*citing Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007)).

As an initial matter, the complaint does not specifically allege Thomas and Leslie should be liable for the medical attention plaintiff received following Lyons' attack. (Doc. 23, p. 6-7). After Lyons' attack, plaintiff appeared at the officer's station bleeding. Shortly thereafter, Captain Jenkins arrived, ordered plaintiff to leave the dorm, and instructed an unknown officer to take plaintiff to the medical department. (Doc. 74-3, p. 14). The only conceivable medical claim against defendants is that they failed to immediately take plaintiff to the medical department. Plaintiff does not allege, however, that he demanded medical attention from defendants or that he asked them to provide crutches or a wheelchair. Nor does the

Case No. 5:15cv67-WS-CJK

evidence indicate the momentary delay between the attack and Jenkins' arrival caused additional injury. *See Taylor v. Adams*, 221 F.3d 1254, 1259-60 (11th Cir. 2000) ("Deliberate indifference" can include "the delay of treatment for obviously serious conditions where it is apparent that delay would detrimentally exacerbate the medical problem, the delay does seriously exacerbate the medical problem, and the delay is medically unjustified.") (quotation and citation omitted); *Baez v. Rogers*, 522 F. App'x 819 (11th Cir. 2013) (affirming dismissal of § 1983 complaint when prisoner failed to allege the defendant "acted with deliberate indifference or that . . . his inguinal hernia or entrapped nerve worsened or that he suffered any permanent harm due to [the defendant's] conduct"). Defendants' motion for summary judgment, therefore, should be granted.

Accordingly, it is respectfully RECOMMENDED:

1. That defendants Thomas and Leslie's motion for summary judgment (doc. 74) be GRANTED.

2. That the clerk be directed to enter judgment in favor of defendants Thomas and Leslie and against plaintiff.

3. That plaintiff's claim against the "officer who escorted plaintiff to medical" be DISMISSED WITHOUT PREJUDICE.

4. That the clerk be directed to close the file.

At Pensacola, Florida, this 15th day of November, 2017.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.